# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTHA DUMITRESCU, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> COMPANIA PANAMENA DE AVIACION, S.A., a foreign corporation, <br><br> Defendant. | Case No.. 1:20-cv-2125 <br><br> Honorable _____ |

## CLASS ACTION COMPLAINT AND JURY DEMAND

## INTRODUCTION

1. Plaintiff Martha Dumitrescu ("Plaintiff"), by and through her counsel, files this Class Action Complaint against Compania Panamena De Aviacion, S.A., hereinafter "***Defendant***" or "***Copa***"), on behalf of herself and on behalf of a class of similarly situated individuals, and alleges, upon personal knowledge as to his own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

2. The Covid-19 pandemic confronts Americans with one of the greatest health and economic crises in the history of our nation, threatening the lives and livelihoods of millions. Shared sacrifice and mutual responsibility have never been more important to navigate these uncertain times. Tens of millions have been forced to file for unemployment in a matter of weeks, and pocketbooks are being stretched like never before. For individuals and businesses alike, the need for cash and liquidity has never been greater.

1

3. Unfortunately, Defendant, which operates as Copa Airlines, the publicly traded flag carrier of Panama that generates billions in revenue on an annual basis, has refused to honor its contractual obligations during this crisis.

4. With mounting flight cancellations due to the Covid-19 pandemic, Defendant has refused to provide contractually guaranteed full cash refunds for cancelled flights to passengers. Defendant has reprehensibly extracted maximum capital from customers, while padding its own balance sheets. Defendant's innocent customers are now left holding the bag.

5. In lieu of contractually guaranteed refunds, Defendant has, at best, required Plaintiff and the Class to accept devalued, expiring flight coupons for use on its own airline that carry substantially less or no value to Plaintiff and the Class during this uncertain time.

6. Defendant's uniform conduct is equally applicable to Plaintiff and the Class. Plaintiff brings this action against Defendant for breach of contract and to seeks an order from this Court requiring Defendant to, among other things, (1) discontinue the illegal practice of issuing coupons in lieu of refunds to any Class Member who has not requested coupons, and (2) pay damages and/or restitution to Plaintiff and the Class.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are numerous class members who are citizens of states different from Defendant, a citizen of a foreign state.

8. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in New York, including entering into contracts with New York residents, maintaining a continuous physical business presence in New York, and providing flights and

services in New York. Further, a substantial portion of the acts complained of herein took place in New York.

9. Venue is proper in this District because Defendant systematically and continuously conducts business in this District and many of the events that gave rise to Plaintiff's claims occurred in this District.

**PARTIES**

10. Plaintiff Martha Dumitrescu is an individual and a citizen of New York.

11. Defendant Compania Panamena De Aviacion, S.A., is a foreign corporation organized under the laws of Panama, with its principal place of business in Panama. Defendant's registered agent in New York is C T Corporation System, which accepts service on behalf of Defendant at 28 Liberty Street, New York, New York, 10005.

**FACTUAL ALLEGATIONS**

12. Copa Airlines is an international air carrier that ordinarily offers hundreds of regular flight routes, carrying more than 10 million passengers per year, servicing at least 65 destinations.

13. Defendant's flight route network provides regular routes to numerous airports and destinations in the United States, including Denver; Boston; Chicago; Denver; Fort Lauderdale; Las Vegas; Los Angeles; Miami; New York JFK; New Orleans;; Orlando; San Francisco; Tampa; and Washington Dulles.

14. Defendant's regular routes include multiple flights departing from and arriving in New York's JFK International Airport, located in the Eastern District of New York.

15. Defendant offers and sells flight tickets directly to customers, who make monetary payments to Defendant in exchange for a selected flight itinerary that conforms to customer's

3

specifically selected travel schedule. Defendant also offers flights through multiple online third party booking sites.

16. Defendant collects passenger identification information as part of each ticket sale, including name, address, and telephone information, and each ticket purchased guarantees customers a seat on a specific, scheduled flight departing at a specific time from a specific airport.

17. As part of each ticket purchase, through its Contract of Carriage, Defendant makes a promise and warranty to customers that in the event of a flight cancellation or substantially interrupted flight, customers are entitled to a refund.

18. Section 2.2 of Copa's Contract of Carriage states that "[t]hese Transportation Terms and Conditions are applicable unless they contravene the [National Constitution], ratified international treaties, or the laws or regulations of the countries where they are applicable. If any provision of these Transportation Terms and Conditions are not enforceable, the enforceability of the other provisions shall not be affected."

19. Section 6.7.2.1 of Defendant's Contract of Carriage covers involuntary refunds, whereby the passenger did not choose to have their travel discontinued. It states that "100% of the value of the ticket will be refunded in the event that the Passenger has not used any portion of his ticket" and that "[a] percentage of the value of the ticket will be refunded in the event that the Passenger has used any of the portions of his ticket."

20. Defendant purports to retain the ability to provide vouchers in lieu of refunds to passengers who purchase nonrefundable tickets, but that provision is void in the United States.

21. 49 U.S.C.S. 41712 prohibits unfair or deceptive practices in the air carrier industry and "since at least the time of an Industry Letter of July 15, 1996 … the [DOT's] Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight

is cancelled and the passenger wishes to cancel is a violation" of that section. *Enhancing Airline Passenger Protections*, 76 Fed. Reg. 23110-01, 23129.

22. Prior to the Covid-19 crisis, Defendant honored its promises and warranties to offer U.S. passengers full refunds, as required by DOT rules.

### *Defendant's Response to the Covid-19 Pandemic*

23. On January 30, 2020, the World Health Organization declared the Covid-19 virus a public health emergency of international concern.

24. As of late-February, Covid-19 confirmed cases in the United States were detected and exponentially increasing, including cases that were not caused by recent international travel but through community spread.

25. On March 11, 2020, the WHO officially declared Covid-19 a global pandemic.

26. Throughout March, daily cases of Covid-19 were increasing dramatically as well, in addition to many of the 36 countries where they offer air travel.

27. By March, it was abundantly clear that the United States was going to be hit hard by the rapidly spreading Covid-19 pandemic and that dramatic changes to ordinary consumer behavior, including widespread discontinuation of non-essential travel and congregating in enclosed spaces (like airports and airplanes), were imminent.

28. Across the United States, state and local governments began issuing shelter-in-place orders that specifically prohibited non-essential travel, specifically including air travel because of the extraordinary risk that air travel presented to the ability to strictly adhere to social distancing standards and avoid inter-community and inter-state travel—both of which threatened to dramatically increase the spread of the virus.

29. The U.S. Federal Government issued social distancing guidelines that further warned of the substantial risks of human-to-human and community spread of the virus, and air travel was clearly discouraged.

30. It was entirely known and foreseeable to Defendant that many of its previously scheduled flights, arriving in and departing from the United States, would need to be cancelled in order to protect the public from a catastrophic infection spread and loss of life and respond to the dramatically decreased demand for air travel.

31. Yet, Defendant quietly ceased honoring contractual agreements with Plaintiff and the putative class by discontinuing full cash refunds for cancelled and substantially rescheduled flights. Instead, at best, Defendant may provide certain customers only devalued redeemable credits for future use on their own airline.

32. The credits purportedly offered by Defendant are not automatically applied to accounts, and passengers are required to navigate a bureaucratic process in order to specifically request them.

33. Defendant has erected bureaucratic barriers which prevent passengers from requesting and obtaining refunds or flight credits, ensuring a windfall for Defendant.

34. For passengers who are able to successfully navigate the request process, Defendant also set harsh and untenable expiration dates on the future credits, permitting the company to receive a windfall because many passengers will not redeem the credits.

35. The practice of offering expiring credits in lieu of refunds is particularly wrongful and inadequate during the Covid-19 epidemic because it remains entirely unclear when international air travel will once again be safe.

36. The future flight credits provide Defendant additional opportunities to charge service, processing, baggage, and other fees that will ensure Defendant additional future profits—while retaining Plaintiff cash in the interim—substantially diminishing any value for Plaintiff and the putative class.

37. Recognizing the abuse, and potential for abuse, by Defendant and other airline companies, the United States Department of Transportation ("DOT") was forced to step in to remind Defendant that they remain under an obligation to provide passengers with their rights to a refund for a cancelled flight resulting from the Covid-19 pandemic.

38. On April 3, 2020, the DOT issued a notice to remind carriers that, "passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed."[1] The notice stated that "[a]lthough the COVID-19 public health emergency has had an unprecedented impact on air travel, *the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged*." (Emphasis added).

39. The DOT notice continued that:

> [t]he Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable. Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease

---

[1] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last visited April 24, 2020).

7

when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger. Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.

…

Specifically, the Aviation Enforcement Office will refrain from pursuing an enforcement action against a carrier that provided passengers vouchers for future travel in lieu of refunds for cancelled or significantly delayed flights during the COVID-19 public health emergency so long as: (1) the carrier contacts, in a timely manner, the passengers provided vouchers for flights that the carrier cancelled or significantly delayed to notify those passengers that they have the option of a refund; (2) the carrier updates its refund policies and contract of carriage provisions to make clear that it provides refunds to passengers if the carrier cancels a flight or makes a significant schedule change; and (3) the carrier reviews with its personnel, including reservationists, ticket counter agents, refund personnel, and other customer service professionals, the circumstances under which refunds should be made.

40. In addition to violation of its own contract of carriage, Defendant has failed to conform to the April 3, 2020 DOT Notice and 49 U.S.C. 41712 and offer full refunds to its passengers.

41. Defendant has deprived Plaintiff and the Class of the monetary refunds to which they are entitled by (1) failing to provide refunds to their credit or debit cards; (2) issuing coupons or vouchers in place of refunds; (3) rendering it functionally impossible to specifically request refunds or vouchers/coupons by inaccessibility of customer service, with wait times of several hours frequently reported; and/or (4) obscuring passengers' right to a monetary refund.

### *Plaintiff's Use of Defendant's Services*

42. Plaintiff Martha Dumitrescu purchased a round-trip ticket with Defendant to travel from New York JFK airport to Uruguay on March 4, 2020, returning on April 21, 2020.

43. Plaintiff flew from JFK to Urugay on March 4, 2020.

44. Plaintiff received notification that her April 21, 2020 return flight was cancelled.

45. Defendant did not and cannot provide Plaintiff alternative transportation of any kind in relation to the ticket she purchased.

46. Plaintiff was offered only a voucher for her cancelled flight which by its terms must be used within a year.

47. Plaintiff does not want a voucher and seeks a refund. She does not believe it will be safe for her to travel before the voucher expires.

48. Defendant has failed to offer or provide Plaintiff with a monetary refund for the cancelled ticket.

49. Plaintiff has suffered damages as a result of Defendant's conduct.

### **CLASS ALLEGATIONS**

50. Plaintiff brings this class action under Rule 23 and seek certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23. The proposed class is defined as:

> All persons residing in the United States or its territories who purchased tickets for travel on a Copa Airlines flight to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were canceled by Defendant, and who were not provided a monetary refund, including charges and fees. Excluded from the Class are (a) any person who has specifically requested a coupon or voucher in lieu of a monetary refund; (b) any person who requested and received alternative air transportation in lieu of a monetary refund; (c) all persons who are employees, directors, officers, and agents of either Defendant; (d) governmental entities; and (e) the Court, the Court's immediate family, and Court staff.

51. Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

52. Numerosity. Fed. R. Civ. P. 23(a)(1). Defendant carries more than ten million passengers per year, on more than 310 daily scheduled flights to 65 destinations, including 13 in the United States. A significant percentage of those flights beginning in March 2020 have been cancelled. At a minimum, there are thousands of Class Members but very likely many more. The exact size of the proposed class and the identity of all class members can be readily ascertained from Defendant's records.

53. Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. Common issues include:

   A. Whether Defendant formed contracts with its passengers in selling them tickets for air travel;

   B. Whether Defendant's conduct breaches the terms of its contracts with its passengers;

   C. Whether Defendant is required to provide a monetary refund, rather than an expiring voucher, to passengers for cancelled flights.

   D. The nature of the relief, including equitable relief, to which Plaintiff and the class are entitled.

54. Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class she seeks to represent. Plaintiff and all Class members were exposed to substantially similar contracts, breaches, and sustained injuries arising out of and caused by Defendant's unlawful conduct, which occurred pursuant to a uniform policy.

55. Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Further, Plaintiff's counsel is competent and experienced in litigating class actions.

56. Superiority. Fed. R. Civ. P. 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The claims of Plaintiff and individual class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendant, and it would be impracticable for class members to seek redress individually. Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments. Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct. Class certification is therefore appropriate under Rule 23(b)(3).

57. Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the class would create the risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

58. Class certification is also appropriate under Rule 23(b)(2), as Defendant has acted and/or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

# FIRST CAUSE OF ACTION

## Breach of Contract

59. Plaintiff incorporates all factual allegations in the Complaint by reference as if fully set forth herein.

60. A contract was formed between Plaintiff and Class members on the one hand and Defendant on the other with respect to the purchase of airfare.

61. The contract was offered by Defendant and formed at the time Plaintiff and the Class accepted it by purchasing their tickets.

62. The contract that governs the transactions at issue in this case requires refunds for cancelled flights where the passenger does not elect to take substitute transportation.

63. Plaintiff and the Class performed their obligations under the contract.

64. Defendant breached the contract when denied monetary refunds to passengers on canceled or substantially delayed/interrupted flights.

65. Defendant's breaches were willful and not the result of mistake or inadvertence.

66. As a result of Defendant's breach, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the class of similarly situated individuals, requests the Court to:

(a) Certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiff as representative of the class and designate counsel of record as class counsel;

(b) Order Defendant to provide actual damages and equitable monetary relief (including restitution) to Plaintiff and class members and/or order Defendant to

(a) disgorge profits realized as a result of its unlawful conduct;

(c) Order Defendant to pay punitive damages, as allowable by law, to Plaintiff and class members;

(d) Declare Defendant's conduct unlawful and enter an order enjoining Defendant from continuing to engage in the conduct alleged herein;

(e) For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

(f) For costs of the proceedings herein;

(g) For reasonable attorneys' fees as allowed by law; and

(h) Award such other relief as the Court deems appropriate under the circumstances.

## **JURY DEMAND**

Plaintiff, on behalf of herself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: May 10, 2020

Respectfully submitted,

**LIDDLE & DUBIN, P.C.**

s/ Nicholas A. Coulson

David R. Dubin (PHV Forthcoming)
ddubin@ldclassaction.com
Nicholas A. Coulson (PHV Forthcoming)
ncoulson@ldclassaction.com
975 E. Jefferson Avenue
Detroit, Michigan 48207
Tel: 313-392-0015
Fax: 313-392-0025

*Attorneys for Plaintiff and the Putative Class*